UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CR-113-PLR-HBG |
| | ) | |
| ROBERT M. MAUGHON, M.D., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

The Defendant appeared before the undersigned on May 24, 2018, for a hearing on the Petition for Action on Conditions of Pretrial Release [Doc. 29]. Assistant United States Attorneys Bart Slabbekorn, Jr., and Cynthia F. Davidson appeared on behalf of the Government. Attorneys Andrew E. Farmer and Travis McCarter represented the Defendant, who was also present. On December 9, 2016, United States Magistrate Judge C. Clifford Shirley, Jr., placed the Defendant on conditional release pursuant to an Order Setting Conditions of Release [Doc. 4]. The conditions of the Defendant's release include that he not commit any other federal, state, or local crime and that he avoid contact with potential witnesses in his case. Judge Shirley exempted the Defendant's employees, who are potential witnesses, from the no contact provision. However, Judge Shirley expressly prohibited the Defendant from discussing this case or the facts upon which it is based with his employees. On May 21, 2018, the Government moved to revoke the Defendant's pretrial release, contending that the Defendant tampered with a witness on May 16 or 17, 2018.

At the initial appearance on the Petition on May 22, 2018, the Government argued that the Defendant is a danger to the community and proffered that he had met with a witness at a bar in Sevier County and had stated to the witness multiple times that files related to this case were

destroyed in the Gatlinburg fire. The Government proffered that the witness repeatedly denied the Defendant's statements to the Defendant and believed that the Defendant was attempting to get him to lie about the case. The Court continued the revocation hearing to May 24, over the Defendant's objection, to permit the Government's witness to attend the hearing. The Court also ordered [Doc. 34] that the Defendant remain in custody pending the May 24 hearing.

At the May 24 revocation hearing, the Government presented the testimony of Brett Keith Branam, who worked as a technology and information services employee at the Defendant's medical clinics from September 2012 until May 22, 2018. Mr. Branam stated that Dr. Maughon, has treated his parents since 2008. He said that, after his home burned in the Gatlinburg fires in 2016, he stopped reporting regularly to the clinics and, instead, worked on an "as needed" basis. He stated that Dr. Maughon had not needed him recently and that he had not received a paycheck since March 2018. Mr. Branam testified that he and other employees of Dr. Maughon's clinics wanted information about the status of Dr. Maughon's case, but Dr. Maughon would only tell them that "everything would be ok." He said that Dr. Maughon did not discuss the facts of the case at work.

Mr. Branam related that he became frustrated with his lack of information about Dr. Maughon's case and he posted a false message on Facebook [Exh. 1], indicating that he would not show up at Dr. Maughon's trial, in an attempt to get others with knowledge to react. Mr. Branam stated that between 1:00 p.m. and 2:30 p.m. the following day, Tuesday, May 15, 2018, Dr. Maughon approached him in a bar a few doors down from Dr. Maughon's Sevierville clinic and began talking to him about the case. Mr. Branam stated that he drank ten to fifteen beers at this bar daily and that, when Dr. Maughon came in, he had already consumed four or five beers, but

2

he was not drunk. Mr. Branam said he asked Dr. Maughon to step outside with him, so he could smoke.

Mr. Branam testified that once they were outside the bar, Dr. Maughon referenced the Facebook post and said that everything would be ok because the files and computer burned at Mr. Branam's house. Mr. Branam said Dr. Maughon knew that he had no paper records or working computers from the clinics at his residence at the time of the Gatlinburg fire and that Dr. Maughon also knew that all of the records at issue in this case are stored electronically on the Cloud. Mr. Branam stated that he denied that files and computers had burned at his house. Mr. Branam said that Dr. Maughon again stated "the files and computers burned at your house." Mr. Branam said that he again denied it. He testified that this same exchange occurred eight to ten times and that he felt like Dr. Maughon was insinuating that he should testify that files and computers burned at his house. Mr. Branam testified that Dr. Maughon then said everything will be alright because, according to his attorneys, the Government does not have a case against him. Mr. Branam also testified that Dr. Maughon told him that the subpoena Branam had received was for a pretrial meeting, not for trial. However, Mr. Branam said he knew this was not true, because the emailed subpoena was for June 5, 2018. Mr. Branam stated that he believed Dr. Maughon would never have come to him, if he had not made the Facebook post.

Mr. Branam testified that, following this meeting with Dr. Maughon, he became concerned that he could get into trouble, if the Government learned of the meeting. He said that he texted Tennessee Bureau of Investigation Agent Margaret Chuinard about his conversation with Dr. Maughon, and she asked him to send her an email describing what had occurred. In this email [Exh. 2], Mr. Branam wrote, "Dr. Maughon asked me to LIE about the allergy files! He wanted me to say they burned in the Gatlinburg fires when my house burned down. He knows . . . that is

a LIE!!!! He also said we didn't have to go to court because the subpoenas were for the pre-trial meetings and not court." On cross-examination, Mr. Branam testified that at their May 15 meeting, Dr. Maughon did not ask him to lie or offer him any money to lie and that he did not feel threatened by Dr. Maughon.

On cross-examination, Mr. Branam testified Dr. Maughon told him that representatives from Allergy Med, a company that makes allergy drops, told Dr. Maughon that it was ok to use the insurance codes that he used. Mr. Branam said that Dr. Maughon "told this to everyone," at some point after he was charged in this case. Mr. Branam also stated that he attended a meeting with Dr. Maughon, former defense counsel Mr. Warlick (now deceased), and two other witnesses. Mr. Branam said Mr. Warlick advised Dr. Maughon that he could delay his trial by accepting a plea offer from the Government and then asking for time to reconsider the offer at the next court appearance, because he had switched attorneys.

The Government also presented a copy of an email [Exh. 3] from Dr. Maughon to an employee Tosha Turner, stating "Do you remember when Josh and Brock told us we could bill insurance including Medicare and Medicaid for the allergy drops??". This email was sent from "Robert Maugham <robertmaughon@aol.com>" on April 2, 2018. [Exh. 4]

AUSA Slabbekorn argued that the Court should revoke the Defendant's release because he violated the condition that he not discuss his case with his employees who are potential witnesses. He argued that the Defendant's May 15 conversation with Brett Branam and his email to Tosha Turner show that Dr. Maughon has violated this condition. AUSA Slabbekorn also argued that there is probable cause to believe the Defendant's May 15, 2018, conversation with Mr. Branam constitutes witness tampering in violation of 18 U.S.C. § 1512. Relying on 18 U.S.C. § 3148(b)(2)(B), Mr. Slabbekorn argued that, because the Defendant committed the felony of

witness tampering, the Defendant faces a rebuttable presumption that no conditions will assure his appearance or the safety of the community. The Government contends that the Defendant has failed to overcome this presumption.

Mr. McCarter argued that the Government has failed to show that the Defendant violated the conditions of his release. He pointed out that Mr. Branam admitted that, despite constant questions from his employees, Dr. Maughon did not talk to his employees about the case. Mr. McCarter stated that Mr. Branam used his Facebook post to enticed Dr. Maughon to meet with him and that Mr. Branam testified that Dr. Maughon never threatened him or asked him to testify falsely. Mr. McCarter characterized Mr. Branam's testimony that Dr. Maughon's former attorney had conspired to defraud the Court as preposterous and observed that the defense could not ask Mr. Warlick about that allegation, because he is deceased. He maintained that there is no evidence that Dr. Maughon tried to coerce or persuade Mr. Branam to testify in a certain way and that Dr. Maughon was merely talking to a friend and employee.

Mr. McCarter also argued that the email to Ms. Turner was from someone with a different name than Dr. Maughon and merely asked about working in the allergy field. Mr. McCarter argued that these conversations with Branam and Turner reflect that Dr. Maughon did not understand the scope of the Court's condition restricting his interactions with his employees. However, Mr. McCarter stated now that Dr. Maughon has experienced incarceration, he understands the gravity of the matter. Mr. McCarter asked the Court to impose the additional conditions that Dr. Maughon not communicate with his employees at all and that Dr. Maughon is restricted to his home and his office until the trial. He maintained that these additional conditions are sufficient to permit Dr. Maughon's release.

AUSA Slabbekorn argued that the history of this case corroborates Mr. Branam's testimony about the advice given by Attorney Warlick in the group meeting. He said that Dr. Maughon signed a plea agreement, asked to switch attorneys, withdrew from the plea agreement, and then asked for additional time to permit new counsel to prepare for trial. AUSA Slabbekorn maintained that Dr. Maughon could have done nothing in response to Mr. Branam's Facebook post. He argued that, instead, Dr. Maughon acted with intent to tamper with a witness.

## ANALYSIS

"A person who has been released under [18 U.S.C. §] 3142 . . . and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). After a hearing, the Court *shall* revoke the defendant's release and detain the defendant, if it finds probable cause to believe the defendant has committed another crime while on release or clear and convincing evidence that the defendant has violated any other condition of release and the Court also finds "there is no condition or combination of conditions of release that will assure the person will not flee or pose a danger to the safety of any other person or the community" or that "the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b)(2). If the Court finds probable cause to believe that the defendant has committed a felony while on pretrial release, "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b).

In the instant case, the Court has conducted a hearing pursuant to 18 U.S.C. § 3148 to determine whether the Defendant violated the terms of his pretrial release and, if a violation has

occurred, whether sanctions are appropriate. The Court finds probable cause to believe that the Defendant has committed the crime of witness tampering in violation of 18 U.S.C. § 1512(b)(1). This statute provides that "[w]hoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—(1) influence, delay, or prevent the testimony of any person in an official proceeding" . . . has committed a felony. Brett Branam, an employee of the Defendant, testified that the Defendant repeatedly told him that files and computers from the Defendant's clinics were destroyed when Mr. Branam's house burned. Mr. Branam said the Defendant repeated this statement eight to ten times, despite Branam's denials and the Defendant's prior knowledge that Branam had no paper files or working office computers at his home and that the records at issue were stored electronically in the Cloud. Mr. Branam reported the conversation to law enforcement that day, because he believed the Defendant was trying to get him to lie about the records and he was concerned that he would get in trouble for the conversation. The Court finds Mr. Branam's testimony to be credible and unimpeached. The Court finds that this evidence from Mr. Branam constitutes probable cause to believe that the Defendant engaged in witness tampering.

The Defendant argued that he lacked the requisite intent to commit witness tampering and that he merely failed to understand the scope of the Court's limitation on his conversations with employees like Mr. Branam, who enticed Dr. Maughon to seek him out with his provocative Facebook post. However, the Court finds that Dr. Maughon knew both that Mr. Branam was his employee and that Mr. Branam was a witness in the case (he knew that Mr. Branam had received a subpoena). The Court finds that Dr. Maughon's repeated suggestion that files and computers burned in Mr. Branam's house in the face of Mr. Branam's repeated denials and Dr. Maughon's knowledge that the electronic files were stored in the Cloud is probable cause of an attempt to

7

corruptly persuade Mr. Branam to testify in a certain way, i.e., to influence Branam's testimony. Accordingly, the rebuttable presumption applies in this case.

The Court also finds that the Government has provided clear and convincing evidence that the Defendant violated the condition that he avoid all contact with witnesses and that he not speak to his employees about this case or its underlying facts. In addition to the May 15 meeting with Mr. Branam set out above, the Government presented an email [Exh. 3] from Dr. Maughon to an employee Tosha Turner, asking if she recalled whether two individuals told them they could bill insurance for allergy drops, a matter that goes to the heart of the allegations in the Indictment. Although the Defendant argued that this email was not from him, the email address contains his name and the employee told the Govenrment that the email was from the Defendant. Moreover, Mr. Branam testified that after the Dr. Maughon was charged in this case, he attended a meeting about the case with Dr. Maughon and his attorney and also that Dr. Maughon told "everyone," including Mr. Branam, that representatives from Allergy Med assured him that it was permissable to use certain insurance codes in relation to the allergy drops. Thus, the Court finds multiple instances of the Defendant violating this condition throughout the pendency of this case.

After finding both probable cause that the Defendant committed a felony and clear and convincing evidence that he violated a condition of release, the Court must still examine whether there are any other conditions or combination of conditions that would assure the Court of the safety of the community and the Defendant's compliance with conditions on release. The Defendant offers to avoid all contact with his employees and to remain on home detention during the twelve-day period leading up to trial. Unfortunately, the Court finds that these additional conditions do not reasonably assure that the Defendant will not again attempt to influence the testimony of witnesses. Home detention would not prevent Dr. Maughon from reaching out to

Case 3:16-cr-00133-PLR-HBG   Document 40   Filed 05/25/18   Page 8 of 10   PageID #: 611

employees by email, as he did with Tosha Turner, or by telephone, nor does it prevent the Defendant from coordinating with others to speak to employees on his behalf. *See United States v. Poulsen*, 521 F. Supp. 2d 699, 706 (6th Cir. 2007) (holding that house arrest, electronic monitoring, and restrictions on telephone use do not reasonably assure the court that the defendant will not commit further acts of witness tampering, because "there is no way that the Court can effectively monitor [the defendant's] use of his telephone and cellphone to prevent him from having improper contact with other witnesses").

Allegations of witness tampering present "a threat to the impartial administration of justice." *Poulsen*, 521 F. Supp. 2d at 703. Thus, our appellate court has recognized that "the very act of witness tampering may satisfy the 'dangerousness' requirement for detaining a defendant pretrial, due to the threat such conduct poses to the integrity of the trial process." *Id.* at 704 (relying on *United States v. LaFontaine*, 210 F.3d 125 (2d Cir. 2000)). In *Poulsen*, the court held that although the defendant did not use violence or threats to influence the witness and, as in the instant case, assured the court that his brief stint in jail awaiting his revocation hearing was sufficient to deter him from further violations, the defendant failed to overcome the rebuttable presumption. *Id.* at 703-04. Here, in light of the Defendant's repeated violation of the condition that he not discuss his case with his employees, the Court finds that the Defendant is unlikely to abide by any condition or combination of conditions of release. *See* 18 U.S.C. § 3148(b)(2). Moreover, based upon the seriousness of the Defendant's violations, which rise to the level of witness tampering with Mr. Branam and potentially fraud upon the Court with the group meeting, the Court finds that no condition or combination of conditions of release exist that will assure that the Defendant will not pose a danger to the safety of any other person or the community. *See* 18 U.S.C. § 3148(b)(2). Accordingly, the Defendant's Order Setting Conditions of Release [**Doc. 4**] is hereby **REVOKED**.

The Defendant is **ORDERED** remanded to the custody of the United States Marshal to await his trial, which is presently scheduled for **June 5, 2018**. The Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Defendant shall be afforded a reasonable opportunity for private consultations with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED.**

ENTER:

_____
United States Magistrate Judge